IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| JOHNNIE M. MASSEY,           )<br>                              )<br>         Plaintiff,           )<br>                              )<br>    v.                        )<br>                              )<br> MICHAEL J. ASTRUE,            )<br> COMMISSIONER OF SOCIAL SECURITY )<br>                              )<br>         Defendant.           )<br>                              ) | Civil Action No. 3:10-2943-TMC-JRM<br><br><br><br>**REPORT AND RECOMMENDATION** |

This case is before the Court pursuant to Local Civil Rules 73.02(B)(2)(a) and 83.VII.02, et seq., DSC, concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

**ADMINISTRATIVE PROCEEDINGS**

Plaintiff applied for DIB on February 10, 2005 and SSI on January 18, 2005 alleging disability commencing on February 17, 2004. See Tr. 419. Her claims were denied initially and upon reconsideration. Plaintiff requested a hearing, which was subsequently held on December 17, 2007 before an Administrative Law Judge ("ALJ"). The ALJ denied Plaintiff's claims on April 23, 2008. After review, the Appeals Council remanded the case to the ALJ for further proceedings. Tr. 432.

A hearing before the ALJ, at which the Plaintiff (represented by counsel) appeared and testified, was held on April 22, 2009. On October 19, 2009, the ALJ issued a decision denying benefits and finding that Plaintiff was not disabled. The ALJ, after hearing the testimony of a

vocational expert ("VE"), concluded that work exists in the national economy which Plaintiff could perform.

Plaintiff was forty-four years old at the time of the ALJ's decision. She has a high school education (GED) and past relevant work as a inspector, machine operator, cashier, and textile bagger/handler. Plaintiff alleges disability due to depressive disorder, fibromyalgia, respiratory impairment, bilateral carpal tunnel syndrome, lumbar spondylosis, and obesity.

The ALJ found (Tr. 23-33):

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2009.

2. The claimant has not engaged in substantial gainful activity since February 17, 2004, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: depressive disorder, fibromyalgia, respiratory impairment, bilateral carpal tunnel syndrome, lumbar spondylosis and obesity. (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work with additional limitations of a sit and/or stand on an occasional basis, limited to no more than frequent handling and fingering bilaterally, further she can never climb ladders and can only occasionally balance, stoop, crouch, kneel, or crawl. Additionally, she is limited to no concentrated exposure to hazards such as moving machinery or unprotected heights, and dust, fumes, or gases. Finally, the claimant is limited to unskilled work.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on November 28, 1964 and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569.a, 416.969 and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 17, 2004 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

The Appeals Council denied Plaintiff's request for review in a decision issued September 15, 2010. Tr. 9-13. Accordingly, the ALJ's decision became the final decision of the Commissioner. Plaintiff filed this action in the United States District Court on November 12, 2010.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971); Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, supra.

## MEDICAL RECORDS

Plaintiff was treated at Heath Springs Medical Center ("HSMC") from 2004-2009. Her diagnoses there included asthma, hypothyroidism, chronic pain, hypertriglyceridemia, neuropathy, fibromyalgia, dyspnea, vertigo, GERD, hypertension, sinusitis, palpitations, irregular heartbeat, bronchitis, allergic reaction, neck pain, polymyositis, possible osteoarthritis, polymyalgia, and new onset of diabetes. See Tr. 231-232, 238-265, 317-321, 552-576, 628-641, 721-726.

On December 27, 2007, Dr. Ifediora F. Afulukwe of HSMC completed a form titled "Ability to Do Work-Related Activities (Physical)." He stated he had treated Plaintiff for approximately two years. Dr. Afulukwe opined that Plaintiff could lift and carry ten pounds on an occasional basis and less than ten pounds on a frequent basis; could stand and walk for less than two hours in an eight-hour day; could sit for about two hours in an eight-hour day; could sit for thirty minutes before needing to change position; could stand for five minutes before needing to change position; would need to walk around every thirty minutes for five minutes at a time; and would need the opportunity to shift at will from sitting or standing/walking. He stated that medical findings of chronic fibromyalgia pain supported his limitations. Dr. Afulukwe also opined that Plaintiff could occasionally twist, stoop (bend), climb stairs, and climb ladders; could never crouch; had limitations on reaching (including overhead), feeling, and pushing/pulling based on her impairment; her handling (gross manipulation) and fingering (fine manipulation) were not affected by her impairment; and her physical functions were affected by her pain, numbness, and weakness. Additionally, Dr. Afulukwe opined that Plaintiff should avoid concentrated exposure to humidity,

noise, and hazards; should avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation; and should avoid all exposure to extreme cold and extreme heat. He thought that her chronic pain was worsened by extreme temperatures and vibration. Dr. Afulukwe estimated that Plaintiff would be absent from work more than three times a month due to her impairments or treatment. Tr. 401-403. On December 11, 2008, Dr. Afulukwe completed a second Ability to Do Work-Related Activities (Physical) form in which he opined the same restrictions as above, except that he thought Plaintiff could lift and carry less than ten pounds on an occasional basis. Tr. 664-666.

Plaintiff was treated at the Springs Memorial Hospital Emergency Room on numerous occasions between 2004 and 2009 for various conditions/illnesses including nausea and vomiting, sinusitis, pain in multiple areas of her body, urinary frequency and urgency, dysuria, exacerbation of fibromyalgia, insomnia, chest pain, pleurisy, chest wall strain, abdominal pain, gastritis, and a viral syndrome. She was admitted to Springs Memorial Hospital on multiple occasions. She was treated for chest pain, diabetic ketoacidosis, chronic edema, hypertension, peptic ulcer disease, new onset diabetes, and persistent anemia. Tr. 146-207, 222-230, 333-400, 642-655, 667-720.

From February 2004 to August 2005, Plaintiff was treated several times at Carolina Bone & Joint for bilateral hand pain, back pain, neck pain, and tingling in her arms. She was diagnosed with mild carpal tunnel syndrome, fibromyalgia, polymyositis, and bulging discs (C4-C5 and C5-C6). Tr. 233-237, 546-551.

Treatment notes at Lancaster Women's Center from 2004 to 2006 indicate that Plaintiff complained of lower back pain, pain radiating to her lower abdomen, groin pain, pelvic pain, leg pain, hot flashes, and moodiness. Tr. 625-627. Plaintiff was treated at Lancaster One Medical in

2004 for fibromyalgia, chronic back and leg pain, moderate obesity, hypothyroidism, and asthma. Tr. 208-213. She was treated at Metrolina Neurological Associates in 2005 for complaints of pain, difficulty sleeping, depression, and anxiety. Tr. 400-415.

From 2005 to 2008, Plaintiff was treated on a number of occasions at Carolina Cardiology Associates/Carolina Heart Specialists. She was diagnosed with chest pain, shortness of breath, palpitations, hypothyroidism, history of bronchial asthma, fibromyalgia, and prolonged tobacco use. In 2005, Plaintiff underwent an echocardiogram which revealed mild mitral and mild tricuspid regurgitation. Tr. 214-220, 266-271, 577-592.

Plaintiff was treated by Dr. Sung Chang of SouthEast Pain Care from 2006 to 2008 for complaints of chronic pain in multiple areas of her body. Treatment included pain medication, muscle relaxers, epidural steroid injections, SI joint injections, medial branch blocks, and trigger point injections. She was diagnosed with chronic lower back pain, myofascial pain, lumbar spondylosis, sacroiliac joint arthropathy, facet arthropathy, chronic abdominal pain following three abdominal surgeries, and depression. Tr. 272-312, 656-661.

In October 2007, Plaintiff briefly sought psychological treatment at Catawba Community Mental Health Center for depression and anxiety symptoms, but a discharge summary indicated she either dropped out or rejected treatment shortly thereafter. Tr. 324-332. Vascular Solutions treated Plaintiff in April and July 2007. Diagnoses included moderate mitral insufficiency, mild tricuspid insufficiency, and a trace of pulmonic insufficiency. Tr. 313-316.

On August 22, 2008, Plaintiff underwent a consultative psychological evaluation with Dr. John C. Whitley, III, a psychologist. The report is unsigned. Dr. Whitley diagnosed Plaintiff with a dysthymic disorder, stated that Plaintiff's chronic pain appeared to be her primary barrier to

6

employment, and opined that Plaintiff had the ability to understand and follow simple work tasks. Tr. 593-596.

On September 17, 2008, Dr. Mary Lang, a state agency physician, reviewed Plaintiff's records and opined that Plaintiff could occasionally lift and or carry up to twenty pounds; could frequently lift and/or carry up to ten pounds; could stand and/or walk for about six hours in an eight-hour workday; and could sit for about six hours in an eight-hour workday. Dr. Lang also opined that Plaintiff had postural and manipulative limitations. Tr. 597-604. On September 27, 2008, Dr. Lea Perritt, a State agency psychologist, completed a psychiatric review technique in which she opined that Plaintiff had an affective disorder which resulted in mild restriction of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration. Dr. Perritt opined that Plaintiff could complete simple repetitive work tasks, sustain attention for periods of two hours, relate appropriately to others, and tolerate routine changes. Tr. 605-621.

## **HEARING TESTIMONY/OTHER EVIDENCE**

In a July 2005 Functional Report, Plaintiff reported she did not need any assistive devices to walk, could walk up to a mile, could lift fifteen to twenty pounds, had a short attention span, and had somewhat limited daily activities. She reported she cared for her personal needs, spent much of the day with her feet propped up or soaking in Epson salts for pain relief, prepared simple meals, did laundry, drove a car, shopped in stores, handled her finances, watched television, attended church every other week, and went to medical appointments. Tr. 108-114. In a July 2008 report, Plaintiff wrote that she took care of her personal needs, made herself a sandwich to eat, went outside the

house two to three times a week, and drove a car occasionally. Tr. 514-522. Additionally, Plaintiff submitted letters from her family and friends detailing her complaints of limitations. Tr. 136-140.

At the April 2009 hearing, Plaintiff testified that she had depression since childhood and it is worsening (Tr. 740), but she is not receiving treatment due to financial difficulties (Tr. 745). She said she has crying spells approximately three times a week which last an average of one hour each. Tr. 742. Plaintiff said that depression affects her concentration such that she has to read something several times to understand it, she gets frustrated, and she gets highly upset. Tr. 742-743.

Plaintiff testified that her pain is worsening. She said she has throbbing, stabbing pain in her neck that radiates in her shoulder. Plaintiff testified that this pain began approximately four to five months prior to the hearing. Tr. 748. She said she continues to have pain in her legs, feet, back, and hips which has worsened such that she is not able to stand as long and has hip pain that causes her to limp. Tr. 748-749. Plaintiff also stated that she has aching ankle pain and ankle swelling (that occurs regardless of her taking her fluid medication) which occurs if she sits or stands for too long. Tr. 749.

Plaintiff stated that she can tend to her own personal care. Tr. 753. She testified her children do all of the household chores. Tr. 752. Plaintiff said she can sit for thirty to forty minutes at a time and stand for forty to forty-five minutes at a time before needing to move around and change positions. Tr. 750-751. She said that her carpal tunnel syndrome prevents her from being able to pick up items such as a gallon of water frequently and causes her difficulty with holding objects. Tr. 753.

**DISCUSSION**

Plaintiff alleges that: (1) the ALJ failed to give proper weight to the opinion of her treating physician; (2) the ALJ erred by engaging in "sit and squirm" jurisprudence; (3) the ALJ failed to properly evaluate her subjective complaints and credibility; (4) the ALJ failed to comply with SSR 02-01p in properly evaluating the severity of her obesity; and (5) the ALJ's decision violates the principles set out in SSR 86-8 by substituting the ALJ's presumptions without evidentiary support. The Commissioner contends that the final decision that Plaintiff was not disabled pursuant to the Social Security Act is supported by substantial evidence[1] and legally sound.

A. Treating Physician

Plaintiff claims that the ALJ erred by discounting the opinion of her treating physician, Dr. Afulukwe. She argues that the ALJ improperly discounted Dr. Afulukwe's opinion based on only two entries in hundreds of pages of medical evidence, that the ALJ's reasoning is flawed even based on those two pages, and the ALJ erred in giving the most weight to the non-examining medical consultants over the opinion of her treating physician. The Commissioner contends that the ALJ properly evaluated the treating physician's opinion, did not rely solely on two records when discounting the opinion, stated more broadly that Dr. Afulukwe's opinion was not well

---

[1]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

9

supported and not consistent with the evidence, and properly relied on the opinions of the State agency physician and psychologist.

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro v. Apfel, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992)).

Under § 404.1527, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors to determine the weight to be afforded the physician's opinion: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527. Social Security Ruling 96-2p provides that an ALJ must give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p.

The ALJ's decision to discount the opinion of Dr. Afulukwe is not supported by substantial evidence. He stated that he gave less weight to Dr. Afulukwe's opinion because it:

> is not well supported and not consistent with the other evidence of record. Significantly, when Dr. Afulukwe evaluated the claimant on May 2, 2008, the

10

> claimant reported that her medications were working. Dr. Afulukwe noted the claimant's chronic pain was unchanged and her medications would be renewed (Exhibit AC18F/23). The claimant returned to Dr. Afulukwe on December 8, 2008. She reported no new complaints. Physical examination revealed the claimant was in no acute distress. Her gait was intact and her station and posture was normal. Romberg testing was negative (Exhibit AC26F//13).

Tr. 31.

The entries cited by the ALJ as supporting his decision to discount Dr. Afulukwe's opinion are not persuasive contradictory evidence. It is unclear how the notation that Plaintiff's chronic pain is unchanged is a reason to discount the treating physician's opinion. Further, the May 2, 2008 entry contains a note that Plaintiff was having more pain than usual; had pain in her neck, nose, and chest; and was in acute and chronic distress at that time. Tr. 573-574. The December 8, 2008 note stated that Plaintiff had no new complaints, but there is no indication that Plaintiff's prior complaints were resolved. Dr. Afulukwe also wrote in this entry that Plaintiff had fibromyalgia syndrome with diffuse musculoskeletal pains. Tr. 641. The Commissioner argues that the ALJ did not just rely on these two entries, but instead broadly stated that Dr. Afulukwe's opinion was not well supported and was not consistent with the other evidence of record. Specifically, the Commissioner argues that Dr. Afulukwe's treatment notes showed that Plaintiff had 5/5 motor strength; did not have any physical deficits other than tenderness to palpation; and was typically alert, fully oriented, and in no acute distress. These entries, however, are not discussed in the ALJ's decision. The Commissioner also argues that the ALJ's decision to discount Dr. Afulukwe's opinion is supported by Plaintiff's reported activities in her disability reports. The ALJ noted that Plaintiff wrote in her January 21, 2003 Function Report that she took her medications, fixed herself something to eat, went outside two to three times a week, and drove short distances. Tr. 26. It is unclear how this statement of limited activity contradicts Dr. Afulukwe's opinion.

11

The ALJ also stated that he gave greater weight to the opinions of the State agency consultants because those opinions were more consistent with the medical evidence of record. Tr. 31. The report from the State agency psychologist, however, gave great weight to the August 22, 2008 opinion of Dr. Whitley. See Tr. 617. Thus, the ALJ appears to have based his decision to discount Dr. Afulukwe's opinion at least in part on the unsigned report. As discussed further below, an unsigned consultative report generally cannot be used to deny benefits.

B.     Obesity

Plaintiff argues that the ALJ failed to comply with SSR-02-01p in evaluating the severity of her obesity. The Commissioner contends that the ALJ properly analyzed Plaintiff's obesity by finding that it was a severe impairment, considered the functional impact of her obesity in combination with other impairments, and determined that the combined impact of Plaintiff's obesity and other impairments was not severe enough to preclude her from performing a limited range of light work.

Pursuant to SSR 02-1p, the ALJ must consider a claimant's obesity in making a number of determinations, including whether the individual has a medically determinable impairment, the severity of the impairment, whether the impairment meets or equals the requirements of a listed impairment, and whether the impairment prevents the claimant from performing her past relevant work or other work in the national economy. When assessing a claimant's residual functional capacity ("RFC"), the ALJ is to consider the "effect obesity has upon the [claimant's] ability to perform routine movement and necessary physical activity within the work environment" as the "combined effects of obesity with other impairments may be greater than might be expected without obesity." SSR 02-1p.

Here, contrary to Plaintiff's argument, the ALJ properly evaluated the severity of Plaintiff's obesity. The ALJ specifically found that Plaintiff's obesity was a severe impairment. Tr. 23. He referenced SSR 02-01p and determined that the combined impact of Plaintiff's obesity and other impairments was not severe enough to preclude the performance of the limited range of light work as set out in the RFC. Tr. 30-31. In doing so, the ALJ noted that the level of Plaintiff's obesity imposes some mechanical strain on weight bearing joints such as hips and knees and would exacerbate her musculoskeletal pain. Tr. 31. Plaintiff has presented nothing to show that her obesity contributed to additional limitations not included in the ALJ's RFC.

C. Credibility/Sit and Squirm

Plaintiff asserts that the ALJ erred in evaluating her subjective complaints by failing to apply the regulatory factors set forth in SSR 96-7p and 20 CFR § 404.1529, and making a conclusory credibility finding in violation of SSR 96-7p. Specifically, she argues that the ALJ relied on "sit and squirm jurisprudence" to discount her credibility; incorrectly noted that objective evidence suggested that her symptoms are adequately controlled with conservative treatment; discounted her pain because she did not pursue getting a spinal cord stimulator (when the ALJ did not even question her about this), and relied on Dr. Whitley's consultative report that was unsigned. The Commissioner argues that the ALJ did not err in discounting Plaintiff's credibility because he noted that: (1) Plaintiff did not use an assistive device and was not immobile despite her complaints of disabling pain; (2) was able to care for her personal needs and drive a car and participate in the hearing without distraction from her supposedly debilitating pain; (3) her carpel tunnel syndrome was treated conservatively without treatment and her hand pain was episodic; (4) her back pain responded to her initial sacroiliac joint injection; (5) her pain symptoms were thought by Dr. Chang to be

13

perhaps related to a psychological condition; (6) she stated that some medications worked; (7) she was advised to increase her rheumatology treatment but did not appear to do so; (8) her asthma was fairly well controlled; (9) she pursued very little mental health treatment; (10) Dr. Whitley found few psychological abnormalities; and (11) the State agency consultants found her capable of work activities that were consistently inconsistent with a finding of "disabled." Tr. 28-31. The Commissioner argues that it was not reversible error for the ALJ to consider Plaintiff's demeanor when he already determined that Plaintiff's level of pain was inconsistent with the objective medical evidence, and he reasonably made inferences from the record and drew his own conclusions from the evidence. Although the Commissioner does not concede that any of the reasons given were erroneous, he argues that even if they are erroneous they do not negate the validity of the entire analysis because other legitimate reasons remained for finding Plaintiff not credible.

In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that

alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

It is unclear from the record whether the ALJ's credibility decision is supported by substantial evidence. Plaintiff has identified numerous reasons given by the ALJ which are not supported by substantial evidence and/or are incorrect under controlling law. The ALJ appears to have discounted Plaintiff's credibility because he believed that Plaintiff's symptoms were adequately controlled with conservative treatment. Plaintiff's treating physician (Dr. Afulukwe), however, found that Plaintiff had pain which caused her great limitations despite treatment. Dr. Jaffe, a rheumatologist, noted (on August 30, 2005) that Plaintiff had failed conservative treatment and care which included exercise, home therapy, anti-inflammatory medications, and muscle relaxers. Tr. 235.

The ALJ discounted Plaintiff's credibility in part based on Dr. Whitley's report (which the Commissioner acknowledges was unsigned - Commissioner's Brief at 14).[2] Additionally, the ALJ appears to have discounted Plaintiff's credibility in part based on the reports of the State agency consultants including the State agency psychologist who, as discussed above, gave great weight to Dr. Whitley's opinion. In general, consultative psychological reports must be signed by the psychologist who performed the examination, 20 C.F.R. §§ 404.1519n(e), 416.919n(e), and unsigned reports may not be used to deny benefits, 20 C.F.R. §§ 404.1519o(b)(1), 416.919o(b)(1). This may not be reversible error where there is substantial evidence in the records to support the ALJ's decision. See, e.g., Toney v. Shalala, 35 F.3d 557, 1994 WL 463427 (4th Cir. 1994)[Table](noting

---

[2] Plaintiff argues that her attorney wrote the ALJ on April 24, 2009 objecting to the report, but the ALJ ignored the letter. She also argues that the Commissioner has once again failed to include the letter in the Administrative Record. There is no indication that the ALJ addressed Plaintiff's objection to the report, as raised in her April 2009 letter. Contrary to Plaintiff's argument, however, the letter is now included in the record. See Tr. 34-35.

that unsigned reports cannot be used to deny benefits, but the unsigned report used was harmless error because substantial evidence supported the decision to deny benefits); Boyd v. Astrue, 2010 WL 3369362 (D. Md. Aug. 23, 2010)(Where decision to discount examining physician's opinion was supported by ALJ's reliance on a treating physician's opinion, the ALJ did not commit reversible error by also discounting the examining physician's opinion based on an unsigned consultative report). Here, however, it is unclear whether other substantial evidence supports the ALJ's decision to discount Plaintiff's credibility.

The ALJ discounted Plaintiff's credibility in large part based on "sit and squirm" observations. Specifically, the ALJ found that Plaintiff did not exhibit any pain behavior, showed no evidence of respiratory distress, and testified well at the hearing with no evidence of a cognitive impairment. Although an ALJ may not base a credibility determination solely on their observations of a claimant's demeanor at the hearing, see Jenkins v. Sullivan, 906 F.2d 107, 108 (4th Cir.1990), an ALJ may include observations of the claimant as part of his or her credibility determination, Shively v. Heckler, 739 F.2d 987, 989 (4th Cir.1984). Here, however, it is unclear whether there is other substantial evidence to show that the ALJ did not rely solely on his observations of Plaintiff's demeanor at the hearing.

The ALJ discounted Plaintiff's credibility in part because she failed to pursue the option of a spinal cord stimulator. The medical records, however, indicate that Plaintiff was interested in obtaining spinal cord stimulation and that her physician was going to try to get her approved for a spinal cord stimulator trial. There is no further indication as to whether Plaintiff was approved or if she failed to pursue this option. Tr. 657-658. As the ALJ did not question Plaintiff about it at the hearing, it is impossible to determine from the record why Plaintiff did not receive this treatment.

Although there may be substantial evidence in the record to support a decision to discount Plaintiff's credibility, it is unclear from the ALJ's decision as he has cited many reasons which are either not supported by substantial evidence, are incorrect under controlling law, or would be error to rely on solely. This action should be remanded to the Commissioner to properly evaluate Plaintiff's credibility.

## **CONCLUSION**

The Commissioner's decision is not supported by substantial evidence. This action should be remanded to the Commissioner to properly evaluate the opinion of Plaintiff's treating physician (Dr. Afulukwe) and evaluate Plaintiff's credibility.

RECOMMENDED that the Commissioner's decision be **reversed** pursuant to sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3) and that the case be **remanded** to the Commissioner for further administrative action as set out above.

Joseph R. McCrorey
United States Magistrate Judge

January 31, 2012
Columbia, South Carolina